J-A18002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.R.L. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.E.B., JR., FATHER | : | No. 671 EDA 2018 |

Appeal from the Decree January 19, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No:  2017-A0168

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.L. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.E.B., JR., FATHER | : | No. 672 EDA 2018 |

Appeal from the Decree January 19, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No:  2017-A0169

BEFORE:   STABILE, J., STEVENS*, P.J.E., and STRASSBURGER**, J.

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 13, 2018**

L.E.B., Jr. ("Father"), appeals from the decrees entered on January 19,

2018, which terminated involuntarily his parental rights to his daughters,

_____

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

A.R.L., born in June 2001, and A.J.L., born in January 2007 (collectively, "the Children").[1] After careful review, we affirm.

Mother and the Children have had a lengthy history of involvement with the Montgomery County Office of Children and Youth ("OCY") dating back to 2010. Father is Mother's former boyfriend. He resides in Virginia and it is not clear from the record what level of contact he has had with the Children since their birth. Most recently, the Children came to the attention of OCY as the result of two incidents that took place in January 2016. In the first incident, OCY received a referral indicating that A.J.L. was truant from school. OCY investigated and discovered that Mother was not sending A.J.L. to school because there was no school bus available where they lived. OCY scheduled a hearing before the juvenile court for January 19, 2016. However, Mother failed to appear at the hearing. In the second incident, which occurred that same day, OCY learned that A.R.L. fled Mother's home due to alleged physical abuse. OCY obtained emergency protective custody of the Children, and the court adjudicated them dependent on January 26, 2016.

On September 20, 2017, OCY filed petitions to terminate Father's parental rights to the Children involuntarily. The orphans' court conducted a

_____

[1] The orphans' court entered separate decrees on the same date terminating involuntarily the parental rights of G.K.L.S. ("Mother"). Mother appealed the termination of her parental rights at Superior Court docket numbers 673 and 674 EDA 2018. We address her appeal in a separate memorandum.

hearing on December 20, 2017, and December 21, 2017.[2]  It entered its decrees terminating Father's rights on January 19, 2018.  Father timely filed a notice of appeal on February 20, 2018,[3] along with a concise statement of errors complained of on appeal.[4]

_____

[2] Jennifer Diveterano Gayle, Esquire, served as the Children's counsel and guardian *ad litem* during the hearing.  Attorney Diveterano stated that she spoke to the Children and that they did not wish to oppose the termination proceedings.  N.T., 12/21/17, at 381-82.  She filed a brief arguing in support of termination in this Court.

[3] Generally, a party must file his or her notice of appeal within thirty days after entry of the decree.  **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken.").  Thirty days after January 19, 2018, was Sunday, February 18, 2018.  In addition, the courts were closed on Monday, February 19, 2018, for Presidents' Day.  As a result, Father timely filed his notice of appeal on Tuesday, February 20, 2018.  **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

[4] It appears that Father filed one notice of appeal from the decrees terminating his parental rights, which was copied and included in the record twice.  The correct procedure in this circumstance is to file a separate notice of appeal for each child.  **See** Pa.R.A.P. 341, Note ("Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  In a recent case, our Supreme Court held that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal."  **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018).  However, the Court clarified that it would apply its holding only "in future cases," because of decades of prior case law that seldom quashed appeals for that reason, and because the citation to case law contained in the note to Rule 341 was unclear.  **Id.**  Thus, because Father filed his notice of appeal prior to the filing of our Supreme Court's decision in **Walker**, we do not quash his appeal.

Father now raises the following claims for our review.

1. Did the honorable [orphans'] court commit error in terminating the parental rights of Father, pursuant to 23 Pa.C.S.A. [§] 2511(a)(1), when the testimony at trial demonstrated that Father had essentially been prevented, against his will, from fulfilling a parental role in the lives of the Children? The evidence at trial failed to establish by clear and convincing evidence that for a six month period preceding the filing of the petitions, Father had evidenced a settled purpose of relinquishing parental claims to the Children or had refused or failed to perform parental duties.

2. Did the honorable [orphans'] court commit error by involuntarily terminating Father's parental rights to the Children where the evidence confirmed that a bond existed between Father and the Children (as it did between Mother and the Children) and [OCY] was unable to establish by clear and convincing evidence that termination was in the best interests of the Children as contemplated by 23 Pa.C.S.A. [§] 2511(b)?

Father's Brief at 2.[5]

We consider these claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

---

[5] In his brief, Father maintains that the orphans' court erred by terminating Mother's parental rights as well. **See** Father's Brief at 4, 14, 17. Father did not attempt to appeal the decrees terminating Mother's parental rights. As stated above, we review Mother's appeal in a separate memorandum.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provides as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> > \*\*\*

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 5 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* Our courts have emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of his or her child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while

others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

Of particular relevance to this appeal, incarceration does not relieve a parent of the obligation to perform parental duties. Our case law does not require that an incarcerated parent "perform the impossible." *Id.* at 857. However, that parent must utilize the resources available in prison to preserve a relationship with his or her child. *Id.* at 855; *see also In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

In the instant matter, the orphans' court concluded that Father failed to perform his parental duties for a period in excess of six months immediately preceding the filing of the termination petition and evidenced a settled purpose of relinquishing his parental rights. Orphans' Court Opinion, 1/18/18, at 5. The court reasoned that Father had little contact with the Children during their time in foster care and failed to cooperate with OCY. *Id.* at 4-5. It observed that Father provided child support and participated in a few phone calls, but did not visit with the Children. *Id.*

Father argues that he was incarcerated while the Children were in foster care, which limited his ability to maintain a relationship with them. Father's Brief at 11-12. However, Father contends that he made an effort to maintain a relationship with the Children by speaking to them on the phone. *Id.* at 5, 9, 11, 13-14. He also maintains that he strove to improve his life by getting out of prison and obtaining appropriate housing. *Id.* at 5, 10-11, 14. He

notes that he paid child support and participated in the Children's shelter care hearing. *Id.* at 10.

We discern no abuse of discretion by the orphans' court. As explained above, the record indicates that Father resides in Virginia. At the time the Children entered foster care, OCY made contact with Father. N.T., 12/20/17, at 147. The Children's former caseworker, Nicketia Bender, testified that she spoke to Father on the phone. *Id.* at 148. Father confirmed that he was the parent of both Children and stated that he had been paying child support. *Id.* at 149-50. He also claimed that he wished to be involved in the reunification process. *Id.* at 150. Father participated in the Children's shelter care hearing by phone. *Id.* at 153.

However, Ms. Bender testified that Father thereafter failed to cooperate with OCY. She explained that OCY sent paperwork to Father, including court orders and a copy of the family service plan. *Id.* at 148. Father confirmed that he received the plan, and Ms. Bender asked him to sign it and send it back. *Id.* at 153. He never did so. *Id.* at 177. Father also failed to provide OCY with information confirming his financial ability to care for the Children and failed to travel to Pennsylvania to visit them. *Id.* at 156. Ms. Bender recounted, "He promised me multiple times that, [']Okay. Fine. I'm going to come up and see them.['] That never occurred." *Id.* At best, the record reveals that Father engaged in sporadic phone calls with the Children. The Children's former foster mother, M.D., recalled approximately three phone calls between Father and the Children during the time that they were residing

in her home, from January 2016 until April 2017. *Id.* at 43, 49. She believed that the most recent phone call occurred in 2016. *Id.* at 49.

Father's failure to maintain contact with OCY continued for the rest of the Children's dependency. The Children's current OCY caseworker, Amber McCarthy, testified that she received this case in August 2016. *Id.* at 195. Around that time, Father reported that he would be moving into a larger home so that the Children could come live with him. *Id.* at 227, 234. However, he was incarcerated for reasons not specified in the record. *Id.* at 227. Ms. McCarthy stated that she last spoke with Father on the phone in January 2017. *Id.* at 226-27. Father claimed that he "was going to be getting out"[6] and that he would be moving and trying to achieve reunification with the Children. *Id.* at 227. She was not sure if Father ever actually moved, because he failed to maintain contact after that call. *Id.* at 234. To her knowledge, Father has had no contact with the Children at least since they left their previous foster home in April 2017. *Id.* at 227-28. She noted that the Children wrote letters to Father, but that he never wrote back. *Id.* at 263.

Thus, the record confirms that Father failed to perform parental duties for a period in excess of six months immediately preceding the filing of the termination petitions on September 20, 2017. Father's last contact with the Children was a phone call sometime in 2016. This was one of approximately three phone calls over the course of more than a year. Father never visited

---

[6] At the start of the termination hearing, Father's counsel stated that he is now "on probation and/or parole supervision[.]" N.T., 12/20/17, at 4.

with the Children, nor did he maintain communication with OCY. The record is somewhat unclear as to what barriers Father may have faced which limited his ability to perform parental duties. For example, the record does not indicate when precisely Father was incarcerated, or for how long. However, it is apparent that he made little if any effort to overcome those barriers. Father's alleged desire to parent the Children, which he failed to demonstrate with any concrete actions other than sporadic phone calls, is not enough to preserve his parental rights.

We next consider whether the orphans' court abused its discretion by involuntarily terminating Father's parental rights to the Children pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

- 10 -

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

The orphans' court concluded that terminating Father's parental rights would best serve the Children's needs and welfare.  Orphans' Court Opinion, 1/18/18, at 13.  The court found that the Children do not share a meaningful bond with Father and that termination would not be detrimental to them.  *Id.*  It observed that the Children reside in a pre-adoptive foster home and refer to their foster mother as "Mom."  *Id.*

Father argues that the Children enjoyed speaking to him during their phone conversations and that they share an important bond.  Father's Brief at 5, 17.  He emphasizes a statement by A.R.L. that she missed him and wanted to see him.  *Id.* at 16.  Father contends that terminating his parental rights would be contrary to the Children's needs and welfare because it would "deny the Children the opportunity to pursue a relationship with a father who dearly loves them, badly wants to be a positive part of their lives and is poised to continue through life as a positive, productive and law-abiding citizen."  *Id.* at 17.

We conclude once again that Father is not entitled to relief.  The record contains at least some evidence of a positive relationship between Father and the Children.  Ms. McCarthy testified that the Children enjoyed speaking to Father on the phone.  N.T., 12/20/17, at 237.  Ms. Bender testified that she contacted Father and spoke to him about visits because A.R.L. "missed him

and wanted to see him." *Id.* at 150. However, as discussed above, Father failed to maintain consistent communication with the Children. Father did not visit with the Children during their time in foster care and had no contact with them at all following a phone call sometime in 2016. Father participated in approximately three phone calls over the course of more than a year. Under the circumstances, it was reasonable for the orphans' court to conclude that the Children and Father do not share a significant bond.

Further, the record indicates that the Children are doing well in foster care. Ms. McCarthy testified that the Children have resided in a pre-adoptive foster home since August 2017. *Id.* at 223-24. She reported that they appear to be happy. *Id.* at 224. When she conducts visits at the home, the Children "seem comfortable. They seem to be laughing and having a good time and doing well." *Id.* at 224-25. Moreover, as mentioned above, the Children's counsel provided a statement at the conclusion of the hearing indicating that she met with both of the Children. N.T., 12/21/17, at 381-82. Counsel stated that the Children "did not want to oppose the termination." *Id.* at 382. Thus, the record confirms that terminating Father's parental rights would best serve the Children's needs and welfare.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to the Children involuntarily. Therefore, we affirm the court's January 19, 2018 decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/13/18</u>